LAWRENCE E. MOONEY, JUDGE
The defendant, Timothy Haynes, appeals the judgment entered by the Circuit Court of the City of St. Louis following his conviction by a jury of unlawful use of a weapon, shooting at a motor vehicle, in violation of section 571.030.1(9) RSMo. (Supp. 2014).[1] ,[2] The trial court sentenced *783 the defendant as a persistent offender to 15 years of imprisonment without parole.
We hold that section 571.030.1(9) is neither ambiguous, nor is it void for vagueness. Furthermore, we cannot read qualifying or restricting language into a statute that is unambiguous. We affirm the trial court's judgment.
Factual and Procedural Background
Late in the evening on January 26, 2015, a repossession agent and a tow-track driver were in the process of repossessing the defendant's car, a 2008 Buick Lucerne. The repossession agent had located the car in the parking lot of a motel on North Broadway in the City of St. Louis. The tow-truck driver, who was seated in his truck, had connected the Buick to the truck for towing off the parking lot when the defendant exited the motel. The repossession agent was seated in her vehicle, immediately behind the Buick and the tow truck, waiting for the tow truck to pull into the street. The defendant approached the Buick, located between the tow truck and the repossession agent's vehicle, and began shooting. The tow-truck driver and the repossession agent fled the parking lot in their separate vehicles, and contacted police.
Police found five bullet holes in the Buick, three in the front passenger door, one in the rear passenger door, and one in the bumper. No person was injured, and police found no bullet holes in the tow truck. The repossession agent testified that her car was not struck by the gunfire. The State charged the defendant with one count of first-degree assault for shooting at the tow truck-driver, one count of unlawful use of a weapon for shooting at the Buick, one count of armed criminal action for using a deadly weapon in connection with the charged assault, and one count of unlawful possession of a firearm.
The defendant testified at trial. He stated that he believed it was unreasonable for his car to be repossessed, and admitted that he intentionally shot the car in order to damage it. The jury convicted the defendant of unlawful use of a weapon and unlawful possession of a firearm. The jury acquitted the defendant of first-degree assault and the related armed criminal action. The trial court sentenced the defendant to a total of 15 years in prison without parole as a persistent offender as required by section 571.030.9. The defendant appeals.
Discussion
The defendant challenges the denial of his motion to dismiss and his motions for judgment of acquittal on the charge of unlawful use of a weapon. He asserts that section 571.030.1(9) should not be interpreted to apply to his conduct of shooting into an unoccupied car because such an interpretation violates his right of due process.
The State charged that "the defendant, knowingly shot a firearm at a motor vehicle, a 2008 Buick Lucerne" in violation of section 571.030. Under subdivision (3) of section 571.030.1, a person commits the crime of unlawful use of weapons if he knowingly "[d]ischarges or shoots a firearm into a ... motor vehicle." (Emphasis added). Under subdivision (9) of section 571.030.1, a person commits the crime of unlawful use of weapons if he knowingly "[d]ischarges or shoots a firearm at or *784 from a motor vehicle." (Emphasis added).[3] The defendant does not dispute that he discharged a firearm multiple times, striking a motor vehicle. Indeed, the defendant testified that he did so intentionally in order to damage the vehicle and thus compel the lienholder to incur repair costs.
The defendant first argues that "[t]here is no appreciable difference between shooting 'at' a motor vehicle under [section] 571.030.1(9) or 'into' a motor vehicle under [section] 571.030.1(3) if there is no live person in proximity to the car." We initially observe that in this case, two live people were, in fact, in proximity to the car at which the defendant shot. The tow-truck driver was seated in the truck to which the defendant's car was connected, and the repossession agent was seated in her own vehicle immediately behind the defendant's car.
Statutory interpretation is a question of law that we review de novo. State v. Key, 437 S.W.3d 264, 268 (Mo. App. W.D. 2014). When interpreting a statute, we must ascertain the intent of the legislature from the language used, and if possible, give effect to that intent. Id. We give the language used in the statute its plain and ordinary meaning. Id. We resort to statutory construction only when statutory language is ambiguous; otherwise, we must give effect to the statute as written. Id. A statute is considered ambiguous only when we cannot ascertain the legislative intent from the language of the statute by giving the language its plain and ordinary meaning. Id.
Pursuant to section 571.030.1(9), a person commits the offense of unlawful use of weapons if he or she knowingly "[d]ischarges or shoots a firearm at or from a motor vehicle." Giving the language in subdivision (9) its plain and ordinary meaning, we find that the legislature intended to prohibit shooting at a motor vehicle, whether that vehicle is occupied or unoccupied. Indeed, Missouri courts have previously interpreted section 571.030.1(9) to criminalize the specific act of shooting a firearm at a motor vehicle. Id. at 269 ; State v. Barraza , 238 S.W.3d 187, 192 (Mo. App. W.D. 2007). See also, State v. Alexander, 505 S.W.3d 384, 399 (Mo. App. E.D. 2016) (observing that conviction under section 571.030.1(9) "requires proof that a shot was fired at a motor vehicle."). Because no ambiguity exists in section 571.030.1(9), we need not resort to statutory construction. And because subdivision (9) does not expressly require that the motor, vehicle be occupied at the time of the shooting, we must give effect to the statute as written, without reading additional requirements into it. In short, we will not add words to a plainly-worded statute to alter its meaning.
The defendant next points to what he characterizes as a gross disparity between the punishments for the two offenses enumerated in subdivision (3) and subdivision (9). The defendant is correct that the respective penalties are far different for violation *785 of subdivision (3)-shooting into a motor vehicle-versus violation of subdivision (9)-shooting at a motor vehicle. Section 571.030.8 sets forth the classifications for the offenses enumerated in subsection 1. At the time of the incident here, section 571.030.8 provided that:
Unlawful use of weapons is a class D felony unless committed pursuant to ... subdivision (9) of subsection 1 of this section, in which case it is a class B felony, except that if the violation of subdivision (9) of subsection 1 of this section results in injury or death to another person, it is a class A felony.
Section 571.030.8 did not specifically identify the classification for violation of subdivision (3); therefore, such a violation was punishable as a class D felony at the time of this incident. A class D felony then carried a penalty of up to four years of imprisonment. Section 558.011.1(4).
As expressly set forth above, a violation of section 571.030.1(9) constituted a class B felony. Specifically, violation of subsection 1, subdivision (9) where no injury or death occurred carried penalties ranging from "the maximum authorized term of imprisonment for a class B felony" for a first-time offender to "the maximum authorized term of imprisonment for a class B felony without the possibility of parole, probation, or conditional release" for a defendant found pursuant to section 558.016 to be a persistent offender.[4] Section 571.030.9. Here, the trial court sentenced the defendant to 15 years of imprisonment without parole as a persistent offender in accord with section 571.030.9.
Thus, the defendant contends, section 571.030 is unconstitutionally vague because it encourages arbitrary and discriminatory enforcement. He argues that section 571.030 allows the State to seek 15 years of imprisonment without probation or parole against one defendant for violation of subdivision (9) where no person is injured-as in his case-while seeking only four years or less of imprisonment against another defendant who commits the same conduct but is charged under subdivision (3).
The void-for-vagueness doctrine ensures that laws give fair and adequate notice of prohibited conduct. Feldhaus v. State, 311 S.W.3d 802, 806 (Mo. banc 2010). The doctrine also protects against arbitrary and discriminatory enforcement. Id. When enforcing the doctrine, the test is whether the statute's language conveys to a person of ordinary intelligence a warning regarding the prohibited conduct that is sufficiently definite when measured by common understanding and practices. Id.
We agree that the respective penalties of subdivisions (3) and (9) of section 571.030.1 make little sense when compared to one another. The legislature added subdivision (9) to section 571.030.1 in 1995 *786 along with the greater penalties set forth for its violation in what is now section 571.030.9. H.B. 160, 88th Gen. Assem. 1st Reg. Sess. (Mo. 1995). Our research has revealed only two published opinions involving the violation of subdivision (3) by shooting into a motor vehicle committed after enactment of subdivision (9).[5] Both of those cases involved a single shot fired into the passenger compartment of a motor vehicle. However, differing penalties between the two subdivisions of the statute do not render section 571.030.1(9) unconstitutionally vague.
The statute is not vague when applied to the facts of this case. A person of ordinary intelligence would understand that discharging or shooting a firearm at a car is prohibited. On a challenge that a statute is unconstitutionally vague, it is not necessary to determine if a situation could be imagined in which the language of the statute as applied might be vague or confusing. Feldhaus , 311 S.W.3d at 806. Rather, we evaluate the language by applying it to the facts at hand. State v. Faruqi , 344 S.W.3d 193, 200 (Mo. banc 2011). If the statute can be applied constitutionally to an individual, we will not consider an attack on the statute on the ground that impliedly could apply to other persons or situations in which its application might be unconstitutional. Id.
Furthermore, a prosecutor has broad discretion to determine whether, when, and how criminal laws will be enforced. State v. Honeycutt , 96 S.W.3d 85, 89 (Mo. banc 2003) ; State v. Williams , 407 S.W.3d 691, 693 (Mo. App. E.D. 2013). The prosecutor's decision is seldom subject to judicial review. Honeycutt , 96 S.W.3d at 89. Where a defendant's conduct potentially constitutes multiple, different offenses, it is for the prosecutor to decide which offense to charge. State v. Conaway, 557 S.W.3d 372, 384 (Mo. App. W.D. 2018). A defendant cannot override the exercise of prosecutorial discretion by arguing that the State could have charged a different offense. Id. When the State has probable cause to believe that a crime has been committed, the decision whether to prosecute and what charges to file generally rests entirely within the prosecutor's discretion. Id. (quoting State v. Rose ) 481 S.W.3d 145, 148 (Mo. App. W.D. 2016).
Finally, the defendant urges us to "adopt the 'plausible interpretation' of [section] 571.030.1(9)," and to hold that it prohibits only the conduct of shooting into an occupied vehicle. The defendant contends that if we were to adopt this interpretation, then his conduct of shooting "at" the unoccupied Buick would not constitute a crime under section 571.030.1(9); thus, the evidence was insufficient as a matter of law to support his conviction.
We decline to rewrite section 571.030.1(9) in order to adopt the defendant's urged "plausible interpretation." Missouri cases plainly hold that section 571.030.1(9) criminalizes the act of shooting a firearm at a motor vehicle. Key , 437 S.W.3d at 269 ; Barraza , 238 S.W.3d at 192. The evidence adduced at trial-including the defendant's testimony that he fired five shots at the Buick at close range in order to damage the vehicle-overwhelmingly established the defendant's guilt under section 571.030.1(9) as written.
*787 We must interpret and apply the laws as the legislature writes them. State v. Fields , 517 S.W.3d 549, 558 (Mo. App. E.D. 2016). "[A]ny argument as to the alleged unfairness of construction of a statute as written, the difficulty in obtaining relief occasioned by the wording of a statute, or the policy ramifications thereof should be addressed to the legislative and executive branches of government." Id.
Conclusion
We find that section 571.030.1(9) is neither ambiguous, nor is it void for vagueness. Furthermore, we cannot read qualifying or restricting language such as the word "occupied" into a statute that is not ambiguous in order to change its meaning. If remedy is to be afforded for the severity of the sentence, such redress must be sought from the legislative and executive branches of government. We affirm the trial court's judgment.
SHERRI B. SULLIVAN, P.J., and JAMES M. DOWD, J., concur.

All statutory references are to RSMo. (Supp. 2014) except as otherwise indicated.

The jury also found the defendant guilty of one count of unlawful possession of a firearm as a convicted felon, in violation of section 571.070 RSMo. (Supp. 2013), although the defendant does not appeal this conviction. The court sentenced the defendant to seven years on this charge to be served concurrently with the 15-year sentence for the unlawful use of a weapon. Furthermore, the jury acquitted the defendant of one count each of first-degree assault and armed criminal action.

At all times relevant here, section 571.030.1 provided in pertinent part:
A person commits the crime of unlawful use of weapons if he or she knowingly:
* * *
(3) Discharges or shoots a firearm into a dwelling house, a railroad train, boat, aircraft, or motor vehicle as defined in section 302.010, or any building or structure used for the assembling of people; or
* * *
(9) Discharges or shoots a firearm at or from a motor vehicle, as defined in section 301.010, discharges or shoots a firearm at any person, or at any other motor vehicle, or at any building or habitable structure, unless the person was lawfully acting in self-defense[.]
(Emphases added.)

Section 571.030.9 provided in full:
Violations of subdivision (9) of subsection 1 of this section shall be punished as follows:
(1) For the first violation a person shall be sentenced to the maximum authorized term of imprisonment for a class B felony;
(2) For any violation by a prior offender as defined in section 558.016, a person shall be sentenced to the maximum authorized term of imprisonment for a class B felony without the possibility of parole, probation or conditional release for a term of ten years;
(3) For any violation by a persistent offender as defined in section 558.016, a person shall be sentenced to the maximum authorized term of imprisonment for a class B felony without the possibility of parole, probation, or conditional release;
(4) For any violation which results in injury or death to another person, a person shall be sentenced to an authorized disposition for a class A felony.

Unlawful use of a weapon, shooting into a motor vehicle, under section 571.030.1(3) provided the underlying felony for a charge of felony murder in State v. Coleman, 949 S.W.2d 137, 142 (Mo. App. W.D. 1997). In Coleman, the defendant fired a single shot through the rear windshield and into the car's passenger compartment, killing a child passenger. 949 S.W.2d at 141. In State v. Aborn, 445 S.W.3d 570, 571 (Mo. App. S.D. 2013), the defendant fired a single shot into the passenger compartment of the victim's truck, but did not injure the victim.